UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CESAR MARTINEZ, | |
| Plaintiff, | CASE NO.   C06-5624RBL-KLS |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE[1], Commissioner of Social Security, | Noted for August 3, 2007 |
| Defendant. | |

Plaintiff, Cesar Martinez, has brought this matter for judicial review of the denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-nine years old.[2] Tr. 33. He has 14 years of education, including training

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue, who recently became acting Commissioner of Social Security, hereby automatically is substituted for Joanne B. Barnhart.

[2] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

resulting in an airframe and power plant mechanic license, and past work experience as a mechanic, an aircraft mechanic, a deliverer, a postal letter carrier, and a store manager. Tr. 265-70.

On March 25, 2005, plaintiff protectively filed an application for disability insurance benefits, alleging disability as of October 1, 2004, due to an ankle disorder in both feet, diabetes and a left shoulder problem. Tr. 26, 65-66, 109. His application was denied initially and on reconsideration. Tr. 33, 35-36, 44. A hearing was held before an administrative law judge ("ALJ") on March 2, 2006, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 260-307. Also at the hearing, plaintiff amended his alleged onset date of disability to February 1, 2005. Tr. 26, 297-98.

On April 28, 2006, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[3] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of diabetes, peripheral neuropathy related to diabetes, sinus tarsi syndrome, and right ankle arterial calcifications with a small osteophyte;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and

(4) at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which did not preclude him from performing his past relevant work as a store manager.

Tr. 28-32. Plaintiff's request for review was denied by the Appeals Council on August 30, 2006, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981.

On October 26, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

(a) the ALJ erred in evaluating the medical evidence in the record;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ erred in evaluating the lay witness evidence in the record;

(d) the ALJ erred in assessing plaintiff's residual functional capacity;

---

[3]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(e) the ALJ erred in finding plaintiff capable of returning to his past relevant work; and

(f) the ALJ erred in failing to show plaintiff to be capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ Did Not Err in Evaluating the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a

REPORT AND RECOMMENDATION
Page - 3

1  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
2  thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence."
3  <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the
4  ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

5        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
6  either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a
7  treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and
8  legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the
9  ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739
10 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain
11 why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07
12 (3d Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

13       In general, more weight is given to a treating physician's opinion than to the opinions of those who
14 do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of
15 a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or
16 "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190,
17 1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242
18 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the
19 opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may
20 constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-
21 31; <u>Tonapetyan</u>, 242 F.3d at 1149.

22       Plaintiff argues the ALJ improperly mischaracterized some of the medical evidence in the record and
23 erred in failed to mention other such evidence.  As explained below, however, the undersigned finds this
24 argument to be completely devoid of merit.  Indeed, it borders on the disingenuous.  For example, plaintiff
25 first faults the ALJ for stating plaintiff was found to have a "mild decrease in sensation" in late January 2005
26 (Tr. 30), but then failing to note the examining physician reported that a nerve conduction study showed "a
27 moderate decrease in motor sensory concerns" (Tr. 144).

28       The neurological examination performed at the time, though, clearly revealed only a mild decrease in

sensation, and overall his physical examination was found to be "normal." Tr. 141. The ALJ's reading of this particular treatment note, therefore, was not inaccurate. Even if some ambiguity or conflict could be said to exist, it was the ALJ's responsibility to resolve it. As such, there was no error on the part of the ALJ in finding plaintiff showed only a mild decrease in sensation at this time. In any event, even if there was some sort of error here, plaintiff has failed to show its relevance. In other words, merely because a moderate decrease of sensation may existed at this time, there is no indication as to what, if any, specific work-related limitations were caused by such a decrease.

Plaintiff next implies the ALJ distorted the record by finding he "initially reported good results" from a cortisone injection received in January 2005, and then reported "gradually recurring" symptoms in March 2005 (Tr. 30), without also noting that the record shows a notation of "severe" pain in late February 2005 (Tr. 181). However, the issue plaintiff raises really concerns the ALJ's analysis of the credibility of his pain testimony, which is dealt with below, not the ALJ's evaluation of the objective medical evidence in the record. As such, once more plaintiff has failed to establish that issue's relevance, as he points to no objective medical evidence of actual work-related or other functional limitations.

The objective medical evidence that is contained in the record, furthermore, indicates plaintiff did get significant improvement from that January 2005 injection. For example, he reported in early February 2005, that he had "had fairly good results with cortisone injection on 1/27/05." Tr. 142. Then again, in early March 2005, as noted by the ALJ, plaintiff reported that "he felt approximately 50% relief with this injection," although his symptoms were "slowly reoccurring." Tr. 153. It is not even clear that the late February 2005 report of "severe ankle/foot pain" concerned the same ankle/foot that received the injection. That is, the late February treatment note does not indicate which ankle/foot is being referred to (Tr. 181), whereas the early March treatment note specifically notes improvement in the right ankle, with plaintiff requesting another injection for his left ankle (Tr. 142).

Plaintiff next takes issue with the ALJ's statement that his physician reported in early January 2005, that his "significant ankle and dorsal foot pain" was "related mostly to ill fitting shoes." Tr. 30, 183. He asserts the ALJ failed to mention that in the same treatment note he was noted to have "significant ankle and dorsal midfoot tenderness," with some swelling. Tr. 184. However, as just noted, the ALJ did refer to plaintiff's "ankle and dorsal foot pain." See Tr. 30. Admittedly, the ALJ did not mention swelling, but this

REPORT AND RECOMMENDATION
Page - 5

hardly constitutes error as, once again, plaintiff points to no findings regarding work-related limitations connected therewith.

Plaintiff next attempts to find error in the ALJ's analysis by noting that this treatment note is dated January 4, 2005, and that he still was working at the time. While true, this fact is of little, if any, relevance. First, plaintiff's amended alleged onset date of disability is February 1, 2005, less than one month later. Indeed, plaintiff originally claimed an onset date of October 1, 2004. Second, the statement by plaintiff's physician goes not to the issue of when plaintiff's alleged disabling symptoms first began, but to the underlying cause of those symptoms. Here, it is clear that physician believed plaintiff's pain complaints largely were due to improper footwear, creating the strong inference those complaints could be cured, or at least greatly mitigated, by getting better fitting shoes. Third, the record shows plaintiff's pain complaints stem from his diabetes mellitus, a condition which he has had for some time.

Plaintiff further asserts the ALJ failed to mention many of the objective medical findings in the record concerning the severity of his diabetic neuropathy. For example, plaintiff points to portions of the record indicating profound hypoesthesia, poor pain control, numbness, and diminished sensation. See Tr. 163, 173, 210, 215, 249). As noted above, the ALJ need only explain why "significant probative evidence has been rejected." Vincent, 739 F.3d at 1394-95. Further, the mere existence of an impairment, or, as is the case here, impairment-related symptoms, "is insufficient proof of a disability" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Rather, as the undersigned has repeatedly pointed out, plaintiff must show those symptoms have resulted in significant work-related limitations.

Thus, although the record certainly indicates plaintiff has hypoesthesia, numbness and diminished sensation, he has not come forth with any opinion evidence to show how those symptoms have resulted in restrictions greater than those already found by the ALJ. The portions of the record to which plaintiff cites do not reveal any such restrictions.[4] Accordingly, the ALJ was not required to specifically mention this evidence in her decision. For the same reason, plaintiff's assertion that the ALJ erred in failing to note that another physician reported his sleep was poor due to pain and diagnosed him with depression and chronic anxiety, is wholly without merit as well. That is, no medical opinion source in the record has translated

---

[4] In addition, as discussed in further detail in the next section, the ALJ properly found the record contained medical opinion evidence concerning lack of compliance with treatment plaintiff's physicians recommended (Tr. 30-31), which clearly had at least some effect on his ability to control his pain. See, e.g., Tr. 211, 215.

REPORT AND RECOMMENDATION
Page - 6

1 plaintiff's report of poor sleep or his diagnosis of depression and chronic anxiety into actual work-related
2 limitations.

3 II.     The ALJ Properly Assessed Plaintiff's Credibility

4 Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d
5 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749
6 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is
7 based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a
8 claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long
9 as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th
10 Cir. 2001).

11 To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the
12 disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify
13 what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v.
14 Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering,
15 the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at
16 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811,
17 818 (8th Cir. 2003).

18 In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility
19 evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other
20 testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ
21 also may consider a claimant's work record and observations of physicians and other third parties regarding
22 the nature, onset, duration, and frequency of symptoms. Id.

23 As with his arguments regarding the ALJ's evaluation of the medical evidence in the record noted
24 above, plaintiff raises a number of challenges concerning the ALJ's assessment of his credibility, none of
25 which have any merit, or come close thereto. For example, plaintiff criticizes the ALJ for questioning his
26 complaints of pain when no medical sources in the record have done so. First, this statement concerning the
27 record is simply not true. Indeed, one physician found plaintiff to be capable of performing "a variety of
28 work" based on his review of the medical evidence in the record, contrary to his assertion of inability to
work due to pain. See Tr. 208. Second, there is no requirement that the validity of pain complaints must be

questioned by a claimant's medical sources before the ALJ may do so.

Plaintiff also implies the ALJ was wrong to question the validity of his pain complaints, because he has been prescribed strong pain medications by his physicians. If an ALJ was prohibited from questioning a claimant's credibility merely because pain medication has been prescribed, or because such medication is a powerful one, credibility determinations would be fairly simple. However, the case law in this circuit, as set forth above, indicates otherwise. Indeed, there are a wide variety of legitimate reasons upon which the ALJ may base his or her decision to disbelieve a claimant's testimony, irregardless of the type or amount of pain medication that has been prescribed. The ALJ did so here.

Plaintiff next argues the ALJ improperly failed to identify any particular symptom of his which his impairment could not reasonably be expected to produce, after finding that those impairments could only reasonably be expected to produce some of the alleged symptoms. Either plaintiff did not fully read the ALJ's decision, or he is being particularly disingenuous here. The finding of the ALJ to which plaintiff refers clearly is an introductory statement the ALJ gave prior to getting into the specifics of his credibility determination. Immediately after that sentence, the ALJ set forth in great detail his reasons for not finding plaintiff entirely credible regarding his pain complaints. <u>See</u> Tr. 30.

Plaintiff takes issue with the ALJ's statement that his allegations of disabling pain were not entirely consistent with the treatment records (Tr. 30), again on the basis that none of his physicians questioned the validity of his pain. As explained above, such questioning by a claimant's medical sources is not needed for the ALJ himself or herself to find inconsistencies in the record. Plaintiff, furthermore, makes no effort to actually challenge the ALJ's findings regarding the medical record. Once more, the undersigned finds plaintiff has failed to raise a valid issue here.

Plaintiff also argues the ALJ erred in finding his allegations of pain to be not entirely consistent with his daily activities. <u>Id.</u> This, however, is not what the ALJ actually found here. Rather, specifically, the ALJ found as follows:

> In December 2005 he reported his pain was relieved by 70% and he stated that what provoked his pain was cold weather and being on his feet all day (Exhibit 10F-119). This is inconsistent with his testimony that he had no relief from his pain and his testimony that he can stand and walk only a few minutes. Although the claimant testified that he has done no housework since February 2005, he reported at the December 2005 visit that he was able to do light housework (Exhibit 10F-119).

Tr. 30; <u>see also</u> Tr. 255. Thus, the ALJ found plaintiff not fully credible due to his inconsistent statements

regarding relief of his pain, his ability to stand and walk, and whether he was able to do housework, not to any finding that his ability to perform his activities of daily living themselves evidenced an ability to work. Specifically, with respect to housework, the lack of credibility stems from the fact that plaintiff's testimony that he had done <u>no</u> housework since February 2005, was inconsistent with his earlier report in December 2005 that he was in fact was able to do it.

The ALJ further questioned plaintiff's credibility regarding his decision to continue taking his pain medications, when plaintiff testified that such medications offered him no relief. <u>Id.</u>  Plaintiff asserts that he did not testify that his medications offered him no relief, but that it gave him a little relief , but did not alleviate his pain. <u>See</u> Tr. 279-80.  Plaintiff, however, specifically testified that his pain stayed at "an eight and a half or nine" on a ten point scale after taking his medications, the exact same pain level he testified he had without them. Tr. 279.  Further, since plaintiff's pain remained at this same level, then there is little, if any, meaningful difference between his testifying the medications gave him a "little relief," but did not "alleviate" the pain. <u>Id.</u>  The ALJ did not err here.

Continuing on this theme, plaintiff next argues the ALJ erred in stating he reported that his pain had been relieved by 70% in early December 2005, without also mentioning that his pain that day and the worst in the past month was 7 out of 10 and 10 out of 10 respectively. Tr. 30, 255.  The fact that plaintiff's pain on the date of that one examination was 7 out of 10, is not in itself inconsistent with his report that overall his pain had been relieved by 70% by his current medication. Tr. 255.  That is, the 7 out of 10 report is for one isolated instant of time, as appears to be the 10 out of 10 report.  Thus, it is entirely conceivable that although his pain certainly may have been high on these two occasions, plaintiff received significant relief the rest of the time.  Again, the ALJ did not err in reading the record this way.[5]

Plaintiff also makes much of the fact that the treatment provider that day noted he was unable to work then due to pain issues, was experiencing anxiety on and off, and was averaging four hours of sleep per night and waking frequently. Tr. 255.  Once more, it seems plaintiff is raising these issues for the sole purpose of creating the appearance of error, without regard to their relevance to the issue of his credibility or allegations of disability.  First, clearly the medical source here was merely noting plaintiff's own self

---

[5]Plaintiff's report that he received 70% overall pain relief from his current treatment also is inconsistent with his testimony that he receives essentially no pain relief from his medications.

REPORT AND RECOMMENDATION
Page - 9

reports concerning his symptoms. As discussed herein, however, the ALJ did not err in discounting his credibility. Second, and as it seemingly has been repeated *ad infinitum*, plaintiff must do more than merely show he has an impairment or impairment-related symptoms. Rather, he must show how that impairment or those symptoms affected his ability to work. He has not done so.

Nevertheless, plaintiff continues. He asserts that the ALJ's statement that the treatment provider's note that cold weather and being on his feet all day provoked pain is inconsistent with his testimony that he can stand and walk for only a few minutes was erroneous. Rather, plaintiff argues the treatment provider did not state he actually was spending all day on his feet, but instead merely appeared to be commenting on his history, rather than his recent behavior. It is true that these comments are contained in the "[h]istory of present illness" section. Tr. 255. However, it is clear that information could only have come from plaintiff, and the section itself is termed history of present illness. Indeed, immediately after this notation there is a reference to "todays [sic] pain." Id. Needless to say, plaintiff's argument is not well taken.

Moving on, the ALJ discounted plaintiff's credibility in part because "although he testified that he had not looked for work since his alleged onset date, in a questionaire completed in April 2005, he reported spending time job searching." Tr. 30. Plaintiff challenges this finding first on the basis of the assertion that one of the requirements of receiving unemployment is that one look for work. Not surprisingly, however, plaintiff misses the point. The ALJ here was pointing out the inconsistency between his statement on the one hand that he had not been looking for work at all, and on the other hand his report that he indeed had been searching for jobs, at least since April 2005. This is a valid basis on which to discredit his testimony. In addition, the fact that plaintiff may have been required to work does not mean he did not do so or was not looking for it. Indeed, if in fact plaintiff is arguing he was not looking for work, but merely reported that he was because he had to do so, then that would further impugn his credibility.

Plaintiff then attempts to create error where there is none by arguing the ALJ failed to acknowledge his testimony that he could not remember completing a questionaire in April 2005, or whether he had been looking for work back then. See Tr. 289-90. As the ALJ pointed out, however, the questionaire at the very least reflects that he was engaging in the activities reported on that form at the time. Tr. 31. That plaintiff testified at the hearing he could not remember doing them does not change this fact. Further, in response to the question as to whether he thought he gave accurate information back then, plaintiff testified that the

REPORT AND RECOMMENDATION
Page - 10

chores he reported being able to do at the time "probably [was] something" he tried to do, but could not do anymore. Tr. 289. Thus, there is at least some indication from plaintiff himself that he felt his April 2005 report was accurate. Plaintiff further asserts that he testified that his medications affected him mentally. However, there is no objective medical evidence in the record to support this assertion. As such, the ALJ was not required to accept that attempt by plaintiff to justify his inconsistent statements.

Plaintiff next argues that none of the activities he listed on the April 2005 questionaire show that he would be able to perform full-time gainful activity. It is true that to reject a claimant's testimony based on the performance of daily activities, the claimant must be "able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. Further, the claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. Here, however, as discussed above, the ALJ was not discounting plaintiff's testimony based on the nature or extent of the activities he engaged in, but, again, on the inconsistent statements he made regarding those activities. See Tr. 30-31. This too was valid basis for discounting plaintiff's credibility.

The ALJ also found as follows:

> The claimant's credibility is undermined by his poor compliance with treatment recommendations. Problems with medication compliance were noted in July 2005. His treating physician, David Lee, M.D [sic] indicated that his non-compliance was clearly a factor as to his slow recovery from his ankle pain and ongoing neuropathy (Exhibit 4F-61). Dr. Lee indicated in November 2005 that he could not manage the claimant's pain medication regimen because he had compliance issues (Exhibit 7F-86). The claimant testified that his compliance issues were due to inability to afford medications. However, Dr. Lee stated that his poor compliance was only partly due to finances (Exhibit 7F-90). Dr. Lee noted that the claimant was non-compliant with one of his diabetes medications but was managing to obtain his other medications, including Neurontin and Tylenol #3 (Exhibit 4F-61). The claimant sought emergency room treatment after experiencing a reaction to Vicodin, which he had obtained from a friend. The claimant declined to use Fentanyl after this incident, and stated that he had had an allergic reaction to Fentanyl, despite his being shown emergency room records saying that his reaction was to Vicodin (Exhibit 7F-90).

Tr. 30. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). A claimant's statements, therefore, "may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed or there are no good reasons for their failure." SSR 96-7p, 1996 WL 374186 *7. On the other

hand, the ALJ "must not draw any inferences" about a claimant's symptoms and their functional effects from such a failure, "without first considering any explanations" that the claimant "may provide, or other information in the case record, that may explain" that failure. Id.

Here, the ALJ did consider plaintiff's explanation that his poor compliance was due to issues with finances, but noted as well that the record clearly showed such lack of compliance was only partly for this reason. Plaintiff apparently disagrees with this characterization. There is no question, however, that the record supports the ALJ's findings. For example, in late April 2003, plaintiff was noted to be "following lifestyle changes poorly," and to have problems with "exercising consistently" and "dietary compliance" regarding control of his diabetes. Tr. 193. In late May 2003, physical therapy for his left shoulder problem was discontinued "secondary to noncompliance." Tr. 132.

In early July 2005, Dr. Lee commented that he was uncertain as to why plaintiff was non-compliant with his recommended treatment for diabetes, which he stated was "clearly a factor as to the slow recovery of his ankle pain and ongoing neuropathy." Tr. 163. Dr. Lee further commented that there had been "some probable medication compliance issues." Id. As noted by the ALJ, Dr. Lee also opined in early November 2005, as follows:

> Control is poor in part because of finances but also that he doesn't seem to understand that POORLY controlled Diabetes is the underlying reason why he has gastropathy (nausea) and neuropathy (foot/ankle pain). He has allowed his FBS to run high for far too long and doesn't check regularly.
> He waited until mid way thru the visit to tell me that he found a mail away program to get him [sic] reasonable price but will take 2 weeks until he gets the medicine.

Tr. 211, 215 (emphasis in original). Once more, Dr. Lee commented that there had been "some probable medication compliance issues here." Tr. 215. Thus, plaintiff's non-compliance at most was only partly due to financial issues, and even then it appears he found a way to mitigate that barrier.

Plaintiff, however, cites to Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995) for the proposition that the ALJ "must 'examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy' his impairment." (citations omitted). What the Ninth Circuit actually stated in that decision though was that the ALJ must do so only "before basing a denial of benefits on noncompliance." Id. (emphasis added). Thus, while it may be true that it is not clear full compliance with his recommended treatment would eliminate all of plaintiff's pain or other symptoms, the ALJ here was not basing her denial of benefits on his non-compliance. Rather, the ALJ merely was pointing to his non-compliance as another

REPORT AND RECOMMENDATION
Page - 12

1  reason for discounting his credibility, which she was permitted to do.

2  As a further example of plaintiff's inconsistent statements, the ALJ found as follows:

> Treatment records reveal the claimant was also taking care of his stepdaughter, her son, and his disabled son (Exhibit 4F-39, 42).  At the hearing he denied taking care of his stepdaughter or her son.  However, in October 2004, he reported he had to stay home with his stepdaughter who had behavior problems as well as her son and he reported he also had to take care of his own son, who has Down's syndrome (Exhibit 4F-39).

Tr. 31.  Plaintiff argues the ALJ misinterpreted the treatment notes discussed above, but fails to state how those notes were misinterpreted.  The undersigned will not attempt to guess the alleged misinterpretation to which plaintiff refers.  In any event, a review of those specific treatment notes (Tr. 185) supports the ALJ's description thereof.  Plaintiff also argues the ALJ erred in failing to mention that these treatment notes pre-dated his alleged onset date of disability by four months.  Ignoring the fact that plaintiff originally alleged an onset date of disability of October 1, 2004, he apparently continued to take care of his disabled son at least through early December 2005.[6]  Tr. 255.  Curiously – or not – plaintiff himself failed to mention this fact.  Again, the ALJ did not err here.

Plaintiff also challenges the ALJ's finding that there was no evidence in the record that his reported need to lie down and nap during the day was a medical necessity.  See Tr. 31.  In doing so, plaintiff asserts, the ALJ disregarded all of the evidence that supported his testimony that his foot pain disturbed his sleep.  All the evidence plaintiff points to, however, comes from his own testimony or self-report or the statement of his wife, which, as discussed below, the ALJ properly found did not support his allegations of disability.  See Tr. 113, 247, 278.  Clearly, though, the ALJ here was referring to was medical evidence, of which the undersigned agrees there is none to support plaintiff's allegations.  Further, as should be quite obvious by now, the ALJ provided plenty of legitimate reasons for finding plaintiff's testimony and self-reports to be not fully credible.  For the same reason, the undersigned finds no error in the ALJ not considering the claim that plaintiff had to use a motorized scooter when going shopping because of pain.  The record simply fails to show any medical need for such an assistive device, and plaintiff points to none.

Lastly, the ALJ discounted plaintiff's credibility due to his inconsistent statements regarding, and lack of medical evidence concerning, his depression, finding specifically as follows:

---

[6] As further discussed below, the undersigned notes in addition that the ALJ pointed out that while plaintiff testified that his son was self-sufficient, his wife reported that he fed and showered his son, brushed his teeth, read to him and took him to doctor's appointments. Tr. 31, 113.

REPORT AND RECOMMENDATION
Page - 13

> The claimant initially testified that he had no psychological problems but then testified to depression. He has not sought any mental health treatment. He reported depressive symptoms in October 2004, during a period of increased social stressors (Exhibit 4F-39). However, there is no evidence of ongoing problems with depression. He specifically denied depressive symptoms in March 2005 and February 2006 (Exhibits 3F-20, 10F-128).

Tr. 31. Accordingly, for this and the other numerous reasons set forth above, the undersigned finds the ALJ properly determined plaintiff to be not fully credible.

III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record Was Not Improper

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff argues the ALJ erred by failing to properly consider the lay witness statements provided by his wife. With respect to those statements, the ALJ found as follows:

> Mary Martinez, the claimant's wife, completed a questionaire in August 2005. She reported that he builds bird houses and feeders. Although the claimant testified that their son is self-sufficient, she reported that the claimant feeds him, showers him, brushes his teeth, and reads to him. Ms. Martinez reports he cannot stand or walk very long. He no longer hikes or fishes. However, he cooks, does laundry, vacuums, and makes the bed. He no longer mows or gardens. He waxes the car weekly but no longer does mechanical work. He visits friends and goes to a racetrack once or twice a month. (Exhibit 7E). The allegations of Ms. Martinez are generally credible and indicate that [sic] claimant's activities have been fairly extensive.

Tr. 31. The undersigned finds the ALJ properly evaluated this lay witness evidence.

Specifically, plaintiff asserts the ALJ erred by failing to mention his wife's statements that the pain in his legs caused him significant problems with his sleep. See Tr. 113. There is no medical evidence in the record, however, that shows such sleep problems resulted in any work-related limitations, significant or otherwise. Plaintiff also argues the ALJ failed to mention his wife's statements that he could only walk for 15 minutes at a time, and that standing, walking, squatting, kneeling, and stair climbing all caused extreme

REPORT AND RECOMMENDATION
Page - 14

pain. See Tr. 117. These statements no doubt are more work-related. As discussed above, though, the ALJ need only provide germane reasons for discounting lay witness testimony, which she did here by noting the fairly extensive activities plaintiff's wife stated plaintiff performed. Certainly, those activities are contrary to plaintiff's allegation of symptoms resulting in total disability.

IV.    The ALJ Did Not Err in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently. He can stand and walk 15 minutes at a time and sit 20 minutes at a time. He can stand and sit in combination 8 hours out of an 8-hour day. He can occasionally climb, kneel, crouch, and crawl. He should avoid concentrated exposure to vibration and should avoid wearing steel toed shoes.

Tr. 29. Plaintiff argues this residual functional capacity assessment is erroneous, because the ALJ erred in failing to properly consider the medical evidence in the record, his own testimony and the statements of his wife. As discussed above, however, the ALJ did not err in considering such evidence and testimony. As such, the ALJ also did not err in assessing plaintiff's residual functional capacity.

V.    The ALJ Erred in Finding Plaintiff Capable of Returning to His Past Relevant Work

Plaintiff has the burden at step four of the disability evaluation process to show that he is unable to

return to his past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Here, the ALJ determined plaintiff to be capable of returning to his past relevant work as a store manager, which was not precluded by the limitations contained in his residual functional capacity. Tr. 32. Plaintiff first challenges the ALJ's step four determination on the basis that it relied upon an erroneous assessment of his residual functional capacity. As discussed above, however, that assessment was proper.

In explaining his step four finding though, the ALJ went on to state as follows:

> The claimant worked as a store manage from 1987 to 1993 (Exhibit 3E, claimant's testimony). In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as it was actually performed. The vocational expert testified that this job is sedentary and skilled work which does not require the performance of tasks precluded by the claimant's residual functional capacity. The testimony of the vocational expert is consistent with the Dictionary of Occupational Titles [("DOT")] and is accepted as credible.

Id. Plaintiff argues this finding is in error, because the vocational expert's testimony is not consistent with the DOT, which the vocational expert failed to explain and the ALJ failed to note. For the reasons set forth below, the undersigned agrees.

At the hearing, the vocational expert testified that plaintiff performed the job of store manager, and cited to DOT 186.167-042 (market manager). Tr. 302. Plaintiff asserts, however, and defendant agrees, that this is not the job he actually performed in the past. That job both parties state more accurately is described by DOT 185.167-046 (retail store manager). As plaintiff points out, according to the DOT, the market manager job is performed at the sedentary work level, whereas the retail store manager position is defined as being light work. DOT 186.167-042; DOT 185.167-046. Because the ALJ found plaintiff to be capable of performing only a modified range of light work though, it is not clear, without further vocational expert testimony, that he would be able to do the job of retail store manager.

Defendant argues that the ALJ was not required to rely on the vocational expert's testimony at step four of the sequential disability evaluation process. While this may be so, it is clear that the ALJ did in fact rely on that testimony. See Tr. 32. Defendant further argues that the discrepancy between the two DOT jobs is immaterial, because at step four the claimant is the primary source of information regarding his or her past work, and that according to his testimony, his limitations fall within the range of lifting limitations contemplated by light work. See Tr. 270. Thus, defendant asserts, the ALJ properly found plaintiff could perform the store manager job as he actually performed it.

REPORT AND RECOMMENDATION
Page - 16

1    While the ALJ did state in his decision that he found plaintiff able to perform his past job as a store manager as he actually did it, it is not clear he solely relied on plaintiff's testimony in so finding. This is evidenced by the fact that immediately after making this finding, the ALJ also stated he was accepting the vocational expert's testimony that the job was sedentary and found it to be consistent with the DOT. In addition, although the vocational expert testified that plaintiff would be able to perform the job of "store manager" based on the hypothetical question provided by the ALJ, she gave no testimony to indicate that she based her responses on plaintiff's prior testimony regarding the job he actually performed. That is, it appears the vocational expert merely was relying on the DOT description of the market manager job, and not on the retail store manager job that plaintiff did in the past. See Tr. 302-05.

The vocational expert failed to notice the mistake in her testimony and did not correct it, nor, as just noted, did the ALJ. This does not mean, however, that plaintiff could not still perform the job of retail store manager, and the undersigned makes no such finding here. Rather, this matter should be remanded to the Commissioner for further vocational testimony to determine whether plaintiff is capable of performing his past job as a retail store manager, either as he actually performed it or as it is generally performed in the national economy. See 20 C.F.R. § 404.1560; SSR 82-62, 1982 WL 31386. The undersigned does reject though plaintiff's argument that he should be found unable to perform his past relevant work based on his testimony that he cannot be on his feet for more than two hours each day. There is no medical evidence in the record to support that allegation, and the ALJ properly discounted his credibility.

VI.   Plaintiff's Step Five Arguemnt

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

Plaintiff argues the ALJ failed to make any step five finding, and thus the Commissioner failed to meet his burden of showing there are other jobs he is capable of performing. The undersigned once more finds plaintiff to be disingenuous in the argument he presents here. A basic tenet of social security law, and

of which plaintiff should well be aware and of which he shall now be educated, is that once a claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. 20 C.F.R. § 404.1520. As such, because the ALJ found plaintiff to be not disabled at step four of the sequential disability evaluation process, albeit in error, she was not under any obligation to continue on to step five of that process.

The undersigned does find, however, that should the Commissioner find on remand that plaintiff is unable to perform his past relevant work at step four, findings shall be made at step five to determine if he is capable of performing other work existing in significant numbers in the national economy. In so finding, the undersigned expressly rejects plaintiff's last attempt to assert his claim to an outright award of benefits here. He bases this claim on the fact that the vocational expert testified that an individual who had to lay down during the day periodically or missed two or more days of work per month would not be employable. Tr. 305-06. Once more though the evidence in the record does not support plaintiff's claim regarding these limitations. As such, the ALJ was not required to adopt them.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein. Given some of the positions taken by plaintiff in this case, however, the undersigned feels it necessary to add here that this matter should be remanded solely for the purpose of obtaining further vocational expert testimony to determine whether he is capable of returning to his past relevant work and, if necessary, of performing other jobs existing in significant numbers in the national economy.

The Court, as both parties surely must be aware, receives a large number of Social Security cases each year to review. It thus is greatly appreciated when a party puts forth – and indeed it should be expected that each party will put forth – only those legal contentions warranted by existing law, by a non-frivolous argument for the extension, modification, or reversal of existing law, or by the establishment of new law, and those factual allegations having evidentiary support in the record. If, on the other hand, a party raises issues that clearly have little or no merit, alleges facts for which there is no reasonable evidentiary basis, or makes claims for which no legitimate argument can be made that they are supported by

relevant law, the undersigned's, and the Court's, job is made much harder, and wastes precious judicial resources in terms of time and efficiency.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 3, 2007**, as noted in the caption.

DATED this 9th day of July, 2007.

Karen L. Strombom
United States Magistrate Judge